WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Crawford, a married man; Rosemary Crawford, a married woman; and Cleo J. Friederich, a single man,<br><br>Plaintiffs,<br><br>v.<br><br>City of Mesa; Mesa Police Department; Domenick Kaufman; Donald Williams; Jason Nielson; and Sandra Garcia;<br><br>Defendants. | No. CV-13-00303-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. 29) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 32). For the following reasons, Defendants' Motion is granted in part and denied in part and Plaintiffs' Motion is denied.

**BACKGROUND**

This case arises from an encounter at Plaintiffs' Brian and Rosemary Crawford's home in Mesa, Arizona. Around midnight on January 8, 2011, one of the Crawfords' neighbors called Defendant Mesa Police Department to report what the neighbor viewed as suspicious activity at the Crawfords' home. (Doc. 30 ("DSOF"), ¶ 1.) The neighbor described that he was friends with the Crawfords, that he could see that both of their cars were at their house, and that "it is just a little weird seeing their garage door open this late" because "[i]n all the years I've known them since they moved into this neighborhood they've never left that open." (*Id.*) The neighbor claims that he called the

police because he was worried about the Crawfords. (*Id.*)

In response to the call, Mesa police offers were dispatched to the Crawfords' home to do a welfare check. (DSOF ¶ 2.) The police arrived at the residence and tried to make contact with the Crawfords by ringing their doorbell, knocking on their door, and calling the phone number listed for Brian Crawford. (DSOF ¶ 3.) They received no response. (*Id.*) Officer Broadhurst, one of the officers who arrived at the scene, spoke to the neighbor who had made the phone call and the neighbor confirmed that he was concerned about the Crawfords. (DSOF ¶ 5.) The police checked the registration of two cars located at the Crawfords' house and determined that both vehicles were registered to the Crawfords. (DSOF ¶ 6.) The officers were concerned about the Crawfords because of the open garage door and the lack of response despite the appearance that the Crawfords were home. (DSOF ¶ 7.) The police then went around to the side of the Crawfords' house to look for signs of forced entry. (DSOF ¶ 8.) The police noticed a white van parked on a driveway on the side of the Crawfords' property. (Doc. 33 ("PSOF") ¶ 7; DSOF ¶ 9.) The van differed from the two cars parked at the house because it was not clean and well-kept like the other vehicles and it was not registered to the Crawfords. (*Id.*) The police looked into the van's windows and saw tools including hammers and drills. (DSOF ¶ 13.) The officers also saw a man, later identified as Plaintiff Cleo Friederich, sleeping in the back of the van. (DSOF ¶ 14.)

Based on the contents of the van, the officers worried that Friederich might be armed. (DSOF ¶ 15.) The officers woke up Friederich to ask him his name, why he was at the Crawfords' house, and whether he knew the Crawfords. (DSOF ¶ 18.) Friederich became angry at the officers and swore at them, refusing to answer their questions. (DSOF ¶¶ 19, 20.) He did not inform the officers that he is Brian Crawford's cousin. (DSOF ¶¶ 21, 22.) He would not tell the police why he was on the Crawfords' property and, while still in the van, reached for items that the officers could not see or identify. (DSOF ¶ 24.) The officers asked Friederich to exit the van and he eventually complied. (DSOF ¶¶ 26–27.) As he exited the van, Friederich waved his hands in what the police

found to be a menacing manner. (DSOF ¶ 28.) While exiting or shortly after exiting the van, it is disputed whether Friederich hit Detective Williams in the face and chest. (PSOF ¶ 1; DSOF ¶ 31.) Friederich disputes that he made any physical contact with Williams. (PSOF ¶¶ 1, 3, 10–12; DSOF ¶¶ 28–31.) The police handcuffed and arrested Friederich. (DSOF ¶ 34.)

Given Friederich's continued refusal to explain his presence on the property, the neighbor's report, and the failed attempts to contact the Crawfords, Detective Williams returned to the front of the Crawfords' home and tried pounding on their door and knocking on their front windows. (DSOF ¶¶ 37–38.) The Crawfords did not respond. (DSOF ¶ 39.) The officers then entered the house through the open garage door and the unlocked door from the garage into the house. (DSOF ¶ 40.) The officers announced themselves as Mesa police officers before entering the residence and continued to make announcements as they looked for the Crawfords. (DSOF ¶¶ 41–42.) The officers heard no response until they reached the back of the house. (DSOF ¶ 43.) The Crawfords did not hear the police because they were asleep in their bedroom located "quite a distance" from the garage door. (DSOF ¶ 44.) Rosemary Crawford eventually heard the police and tried unsuccessfully to wake up her husband. (DSOF ¶ 48.) When she could not do so, she hid underneath the bed. (DSOF ¶ 49.) The police found Brian Crawford in the back bedroom, told him they were there to do a welfare check, and asked if anyone in the house needed assistance. (DSOF ¶ 51.) The police determined that Brian Crawford did not need assistance and they exited the house within three minutes of making contact with him. (DSOF ¶¶ 51–52.)

The Crawfords and Friederich (collectively "Plaintiffs") filed the instant suit against the City of Mesa, Mesa Police Department, and Mesa Police Department Officers Kaufman, Williams, Nielson, and Garcia (collectively "Officers") in Maricopa County Superior Court. (Doc. 1-2.) On February 11, 2013, Defendants removed the suit to this Court. (Doc. 1.) In their complaint, all of the Plaintiffs allege violations of 42 U.S.C. § 1983 against the individual Officers and the City of Mesa, Friederich alleges claims of

battery, assault, false imprisonment, and intentional infliction of emotional distress against the Officers, and the Crawfords allege claims of trespass and intentional infliction of emotional distress against the Officers. (Doc. 1-2). The Plaintiffs seek damages and declaratory and injunctive relief. (Doc. 1-2 at 8.) Defendants now move for summary judgment (Doc. 29) and, in their Response to Defendants' Motion, Plaintiffs move for partial summary judgment (Doc. 32).

## DISCUSSION

**I.     Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250). Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage.

1  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

**II.    § 1983 Claims and Related Tort Claims**

Plaintiffs first bring claims pursuant to 42 U.S.C. § 1983 against both Defendant Officers (Doc. 1-2 ¶¶ 16–17) and the City of Mesa (*Id.* ¶¶ 33–38). The Crawfords also allege a trespass claim and a claim of intentional infliction of emotional distress related to their § 1983 claim against the Officers. (*Id.* ¶¶ 27–32.) Friederich alleges battery, assault, false imprisonment, and intentional infliction of emotional distress claims against the Officers related to his § 1983 claim. (*Id.* ¶¶ 19–25.) "To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). There is no dispute that any actions taken by the Defendant Officers were taken under color of state law.

**A.    § 1983 Claims against Defendant Officers**

Defendant Officers who were personally involved in the incident[1] assert the defense of qualified immunity. *See Wilson v. Layne*, 526 U.S. 603 (1999). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

---

[1] Plaintiffs bring claims against four named Officers, but do not contest Defendants' assertion that neither Sergeant Kaufman nor Officer Garcia had any personal involvement in the actions at the Crawfords' residence. (Doc. 29 at 7; Doc. 34 at 11.) Defendants are entitled to summary judgment on those claims and this section's further reference to the Officers refers to Plaintiffs' claims against Officers Williams and Nielson.

"Whether a reasonable officer should have known of a right in a particular factual context depends solely and objectively on whether a principle of law had been 'clearly established at the time' the officers took the contested action." *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1000 (D. Ariz. 2012) (internal quotation marks omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 244 (2009) ("This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.") (internal quotation marks omitted).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotations omitted). To determine whether a properly defined right has been clearly established, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "If a principle of law had been 'clearly established' by the Supreme Court, the Ninth Circuit, or a consensus of persuasive authority at the time of the incident, it has been clearly established." *Hulstedt*, 884 F. Supp. 2d at 1001 (citing *al-Kidd*, 131 S. Ct. at 2084).

### 1. The Crawfords

The Crawfords allege that Defendants violated their Fourth Amendment right to be free from unreasonable search and seizure when the Officers entered their home and the curtilage surrounding their home without a warrant. (Doc. 1-2 ¶ 14(a)). They also allege related trespass and intentional infliction of emotional distress claims. (*Id.* ¶¶ 27–32.) The Officers are entitled to qualified immunity on the § 1983 claim if their warrantless entry was objectively reasonable in light of established law at the time. "Warrantless searches by law enforcement officers 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Burgos*, 12-50361, 2013 WL 6727579 (9th Cir. Dec. 23, 2013) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is

1    the emergency doctrine, which is "based on and justified by the fact that, in addition to
2    their role as criminal investigators and law enforcers, the police also function as
3    community caretakers." *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005).
4    Three requirements must be satisfied to justify a warrantless search under this exception:
5    "(1) The police must have reasonable grounds to believe that there is an emergency at
6    hand and an immediate need for their assistance for the protection of life or property [;]
7    (2) The search must not be primarily motivated by intent to arrest and seize evidence [;
8    and] (3) There must be some reasonable basis, approximating probable cause, to associate
9    the emergency with the area or place to be searched." 416 F.3d at 1073–74.

10   Here, under the first prong, the Officers received a phone call from a self-
11   described friend and neighbor of the Crawfords, expressing concern due to their open
12   garage door. When the police arrived, they again spoke to the neighbor and he confirmed
13   his concern for the Crawfords. The Officers began their welfare check by knocking on
14   the Crawfords' door and calling the Crawfords' phone. When these efforts failed despite
15   circumstances indicating that the Crawfords were home, the Officers walked around the
16   house to look for signs of forced entry. When they discovered Friederich, he had been
17   sleeping in a van adjacent to the Crawfords' house, had various tools in the van, and
18   refused to tell officers why he was there or whether he knew the Crawfords. Given these
19   facts, it was reasonable for the Officers to fear that the Crawfords were in danger, and
20   thus it was reasonable for the Officers to enter the Crawfords' home through the unlocked
21   door after their numerous attempts to contact the Crawfords had failed.

22   Under the second prong, it is evident that the Officers entered the house as part of
23   their duty as community caretakers, and not to arrest anyone or collect evidence of any
24   crime. The Officers remained in the home only as long as it took to ascertain that the
25   Crawfords were not in danger and the Officers left the home within three minutes of
26   making contact with Brian Crawford. Plaintiffs do not allege that the Officers did any
27   additional searching of the home beyond what was necessary to complete the welfare
28   check or that the Officers made any attempts to search for evidence of any crime. Finally,

under the third prong, there was a clear basis to associate the Crawfords' property with the potential emergency as the phone call and presence of the Crawfords' cars indicated that the Crawfords were inside the home.

Thus, it was reasonable for the Officers to conclude that their entry onto the Crawfords' property and into their home fell within the scope of the emergency exception to the warrant requirement. Because the Officers met the three requirements for this exception given the totality of the circumstances, the Officers' entry was lawful. The Officers are therefore entitled to qualified immunity on the Crawfords' § 1983 claim against them.

Further, as the entry onto the Crawfords' property was lawful, the Crawfords' trespass claim against the officers fails. *Tensley v. City of Spokane*, 267 Fed. Appx. 558, 560 (9th Cir. 2008) (finding that plaintiff's trespass action failed as officers had entered his property pursuant to valid search warrant).

The Crawfords also allege a claim of intentional infliction of emotional distress. (Doc. 1-2 ¶¶ 30–32.) To state a claim for intentional infliction of emotional distress Plaintiffs must allege three elements: "*first,* the conduct by the defendant must be 'extreme' and 'outrageous'; *second,* the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third,* severe emotional distress must indeed occur as a result of defendant's conduct." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580, 585 (Ariz. 1987) (emphasis in original).

Here, the only conduct Plaintiffs allege is Defendant Officers' lawful entry into their home to conduct a welfare check. Plaintiffs fail to allege any conduct that is "extreme" or "outrageous" to establish a claim of the intentional infliction of emotional distress. Defendant Officers are entitled to summary judgment on the Crawfords' § 1983 claim against them and on their trespass and intentional infliction of emotional distress claims.

## 2. Cleo Friederich

Next, Friederich asserts a § 1983 claim against Defendant Officers due to an alleged violation of his Fourth Amendment right to be free from unreasonable searches and seizures of his person. (Doc. 1-2 ¶ 13(a)). He also alleges related battery, assault, false imprisonment, and intentional infliction of emotional distress claims against the Officers. (Doc. 1-2 ¶¶ 19–25.) Again, Defendant Officers assert both that they committed no such violations and that they are entitled to qualified immunity on the § 1983 claim.

A warrantless arrest by police is reasonable under the Fourth Amendment when "there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.* (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Arizona law allows police officers to arrest an individual who they witness commit a felony. Ariz. Rev. Stat. § 13-3883(A)(1). Arizona law defines "assault" as "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury" or [k]nowingly touching another person with the intent to injure, insult or provoke." Ariz. Rev. Stat. § 13-1203(A). Further, Arizona law permits an officer to use physical force in making an arrest if, in relevant part, "[a] reasonable person would believe that such force is immediately necessary." Ariz. Rev. Stat. §§ 13-409(1); 13-404.

Plaintiff Friederich denies that he hit Detective Williams. (DSOF ¶ 1.) Defendants allege that Friederich stated to his co-Plaintiff that he was waving his hands when he exited the van and that he was arrested "once contact was made." (PSOF ¶¶ 29, 35.) It is disputed whether Friederich make any physical contact with Williams and whether any contact that might have occurred constituted an assault. It is therefore also unclear whether the Officers had probable cause to believe that Friederich had committed a criminal offense. Thus, Defendants are not entitled to summary judgment on Friederich's claims for battery or assault. Defendants' only argument regarding Friederich's false

1  imprisonment claim is that his arrest was lawful. They are, therefore, also not entitled to
2  summary judgment on that claim.

3  However, while it may not be clear whether Friederich's arrest was actually
4  lawful, it was reasonable, based on the totality of circumstances, for the Officers to
5  believe that it was. Friederich does not dispute that he swore at the officers, refused to
6  identify himself, and was swinging his arms when he exited the van. While it is a
7  disputed issue of fact whether he intentionally placed the officers "in reasonable
8  apprehension of imminent physical injury" when he did so, based on the uncontested
9  facts it was reasonable for the Officers to determine that he had. As it was reasonable for
10 the Officers to determine that they had witnessed Friederich commit a felony, it was also
11 reasonable for them to believe that arresting him was lawful and permissible under the
12 Fourth Amendment. The Defendants are therefore entitled to qualified immunity on
13 Friederich's § 1983 claim.

14 Further, Friederich's basis for his intentional infliction of emotional distress claim
15 is the arrest. Whether or not the arrest was lawful, he has failed to allege facts that
16 demonstrate the arrest was "extreme" or "outrageous" conduct under the circumstances
17 described above. Defendants are also entitled to summary judgment on this claim.

18 **B.     § 1983 Claims against City of Mesa**

19 Finally, Plaintiffs assert § 1983 claims against the City of Mesa. They both allege
20 that Mesa is liable for the conduct of Defendant Officers under a theory of respondeat
21 superior and that Mesa is liable as an entity. Plaintiffs' respondeat superior claim fails as,
22 for the reasons described above, Plaintiffs' § 1983 claims against Defendant Officers fail.

23 Plaintiffs also bring a claim against Mesa as an entity. To state a claim against a
24 municipality under § 1983, a plaintiff must allege facts to support that his constitutional
25 rights were violated pursuant to a policy or custom of the municipality. *Cortez v. Cnty. of*
26 *L.A.*, 294 F.3d 1186, 1188 (9th Cir. 2001) (citing *Monell v. Dept. of Soc. Servs. of City of*
27 *New York*, 436 U.S. 658, 690–91 (1978)); *Thompson v. City of L.A.*, 885 F.2d 1439, 1443
28 (9th Cir. 1989), *overruled on other grounds by Bull v. City & Cnty. of San Francisco*, 595

1  F.3d 964 (9th Cir. 2010). Therefore, a § 1983 claim against a municipal defendant
2  "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the municipal
3  defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2)
4  explains how such policy or custom caused the plaintiff's injury. *Sadoski v. Mosley*, 435
5  F.3d 1076, 1080 (9th Cir. 2006).

6  In their Complaint, Plaintiffs allege that Mesa had policies that exhibited
7  deliberate indifference to constitutional rights and that they failed to properly train
8  employees. (Doc. 1-2 ¶¶ 34–38.) In order to establish an official policy or custom
9  sufficient for *Monell* liability, a plaintiff must show a constitutional-right violation
10 resulting from an employee acting pursuant to an expressly adopted official policy."
11 *Delia v. City of Rialto,* 621 F.3d 1069, 1081 (9th Cir. 2010). In the alternative, a plaintiff
12 may show "the existence of a widespread practice that . . . is so permanent and well
13 settled as to constitute a 'custom or usage' with the force of law." *Gillette v. Delmore*,
14 979 F.2d 1342, 1348 (9th Cir. 1992) (quoting *City of St. Louis v. Praprotnik*, 485 U.S.
15 112, 127 (1988)).

16 Plaintiffs allege that "it was the policy and/or custom of the Mesa Police
17 Department . . . to fail to exercise reasonable care in hiring its police officers" and "to
18 inadequately supervise and train its police officers" and that this lead the officers to
19 believe "that their actions would not be properly monitored by supervisor officers and
20 that misconduct would not be investigated or sanctions, but would be tolerated." (Doc 1-2
21 ¶¶ 34–38.) However, Plaintiffs provide no basis for these allegations. The only instance
22 of unconstitutional conduct they allege is the incident at the Crawfords' home. "Proof of
23 a single incident of unconstitutional activity is not sufficient to impose liability under
24 *Monell*, unless proof of the incident includes proof that it was caused by an existing,
25 unconstitutional municipal policy, which policy can be attributed to a municipal
26 policymaker." *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Here, Plaintiffs allege
27 no facts that suggest this incident was caused by any such policy.

28 Plaintiffs also attempt to allege municipal liability based on the theory that Mesa

1  failed to properly train its employees. However, as explained above, Plaintiffs allege no
2  "pattern of similar constitutional violations by untrained employees [that] is ordinarily
3  necessary to demonstrate deliberate indifference for purposes of failure to train." *See*
4  *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). Thus, the City of Mesa is entitled to
5  summary judgment on Plaintiffs' claims of municipal liability under § 1983 and
6  respondeat superior.

## CONCLUSION

8  Defendants are entitled to summary judgment on all of the Crawfords' claims.
9  Defendants are also entitled to summary judgment on Friederich's § 1983, respondeat
10 superior, and intentional infliction of emotional distress claims, but are not entitled to
11 summary judgment on Friederich's assault, battery, and false imprisonment claims
12 because of disputed issues of material fact regarding what, if any, physical contact
13 Friederich made with the Officers. In their Response to Defendants' Motion for Summary
14 Judgment, Plaintiffs assert their own cross-motion for Partial Summary Judgment. (Doc.
15 32.) This Motion fails for the reasons stated above.

16 Plaintiffs originally filed this case in Maricopa County Superior Court and
17 Defendants removed to this Court on the basis of federal question jurisdiction. (Doc. 1.)
18 As the only remaining claims in this case are Friederich's state law claims of assault,
19 battery, and false imprisonment, the Court no longer retains federal question jurisdiction.
20 The only remaining basis for federal jurisdiction in this case is supplemental jurisdiction.
21 The decision to exercise supplemental jurisdiction over the remaining state law claims "is
22 a responsibility that district courts are duty-bound to take seriously." *Acri v. Varian*
23 *Associates, Inc.*, 114 F.3d 999, 1001 *supplemented*, 121 F.3d 714 (9th Cir. 1997). The
24 Supreme Court has stated and the Ninth Circuit has affirmed "that in the usual case in
25 which all federal-law claims are eliminated before trial, the balance of factors . . . will
26 point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*
27 (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). The Court
28 declines to exercise its supplemental jurisdiction in this case. Therefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 29) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 32) is **denied**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to remand this action back to the Maricopa County Superior Court.

Dated this 30th day of June, 2014.

*A. Murray Snow*
G. Murray Snow
United States District Judge